Good morning, Your Honors. If it may please the Court, my name is Jacob Hafter, and I represent Dr. Chudacoff, plaintiff-appellant and cross-appellee in this matter. Dr. Chudacoff is a physician who had his clinical privileges suspended without any adequate due process, let alone notice or opportunity to be heard. Dr. Chudacoff brings this instance in action before the Court, raising numerous issues. Despite the fact that the district court already found that Dr. Chudacoff's due process rights were violated through summary or, excuse me, partial summary judgment decision, it latter reheard the matter ruling on appellee's motion for partial summary judgment on 1983 claims and dismissed the case in its entirety. Apparently, the district court thought that although your client had been denied due process in the sense that he was not given adequate notice of what was to transpire or the charges or an opportunity to assemble information that he might have to, in effect, defend himself, that he hadn't established State action. Do I have that right? I'm not saying the judge was correct, but do I have the description correct? Well, there were two issues. One, it was that 1983 was never specifically pled initially. Let's put that off to the side for the moment. Do I have it right that although the district court, let me finish. Sorry. You never know when a question is being asked, the answer might help you, okay? Although the district court concluded your client had been denied due process in a number of important respects, he concluded that you could not establish State action and, therefore, he granted summary judgment as to all of your claims. Do I have that about right? That's correct, Your Honor. Tell us why that was wrong. Well, that was wrong because, first, he had a decision that he made a finding of fact that was erroneous. He believed that the MEC or the Medical Executive Committee was a standalone entity, when, in fact, it's exactly what its name says. It's a committee. It's no different than a board of trustees or an executive committee of a company would be. It's not a standalone entity, and that was the first error. The second error is his analysis for State action did not follow, for example, some of the other precedent that the Supreme Court, for example, has set forth. I'd like to suggest, you know, the strongest example is looking at the way a private actor was deemed a State actor or acting under the color of State law in Brentwood. Here we had in Brentwood a private association whose purpose was regulated to regulate sports that was actually deemed a State actor. And in Brentwood, they used both a top-down and a bottom-up approach. And by looking at statutes, following it down, they found that the association was a State actor or acting under the color of State law. The same analysis, really, is applicable in this case. The hospital was created by State law, NRS 450.160. Within the State statute was the obligation to govern the physicians. The county trustees, because of our population, was given the authority to be the... The county commissioners were given the authority to be the trustees. They're the ones who signed off on all decisions that were made ultimately with credentialing and bylaws. The county commission is the one who signs off on those. Well, that was only on appeal, right? The county commissioners... Well, actually, Your Honor, the bylaws suggest that the only thing that the medical staff has the authority to do is make recommendations for action and that it's the trustees that are to approve that action. Well, in this particular matter, the trustees didn't approve any action. Well, in this particular matter, Your Honor... In this particular matter, as I understand it, the board of trustees in each situation said, go back and try again. Well, actually, at the time the due process violation was made, the board of trustees never even knew what was going on. I mean, this was a medical staff run by a chief of staff that was making decisions and implementing their decisions without even getting approval from the trustees. They didn't even bring it up, but those actors were empowered by statute and bylaws that were adopted by statute. But wasn't the board's decision that they violated those policies and therefore ought to try it again? Isn't that what you even allege? You know, I read through your complaint and I read through what you say, and it seems to me that you even suggest that these actors violated the very policy the board put together, and therefore, the board had a policy, but it was violated. Well, if we want to take it all the way through, they asked that there be a second fair hearing. And what happened, Your Honors, is that at that second fair hearing, he was actually found to have inadequate training and supervision of residents, a charge that was never made. And then the board of trustees ultimately affirmed that decision, but yet he never had notice or opportunity to be heard on those allegations. And so it prompted an entire second suit, because by the time all that occurred, I mean, we couldn't even bring that in this case. So are your best causes of action in your mind, then, against the members of the MEC? Well, the MEC is a governing committee for the medical staff. Answer my question. Are your best causes? I mean, my worry is you suggest, or I guess I'm listening to you, the MEC is the governing arm of the medical staff, charged with the authority to regulate the physician's staff privileges. Not only that, if they're not that, they're certainly private entities or private people who can be State actors because of the close nexus. Is that the argument you're making? Absolutely it is. But I think the liability- How do we get Ms. Silver? She's not on the MEC. Well, actually, she does sit on the MEC, Your Honor. She sits there. She's not a voting member. She sits in the room, but she's not a participant in the MEC. What's an interesting point, Your Honor, is in- What about saying yes or no to that? Is she a voting member? She's not a voting member. Okay. That's all you have to say? She's not a- You're right, Judge. She's not a voting member. She's not a voting member. But we believe that just because you're not a voting member doesn't mean that you don't have liability or influence on that body. Well, what do you have for that? Nothing in the bylaws, nothing in the governing documents of the institution would suggest that. You're correct, Your Honor. I think the issue- You learned very quickly about that. You learned. I'm learning. You're absolutely right. Another teaching moment. I've also learned by watching that we don't guess. Whether or not Ms. Silver has liability as an individual named defendant, I don't think, though, has bearing on whether or not every defendant is or is not a State actor. No, it doesn't. It's just asking whether one particular defendant is liable. And I think- You've got a lot of them there, so it might not be the worst thing that ever happened to you if Ms. Silver were eliminated. And I think that Dr. Chudikoff would understand if Ms. Silver were eliminated. Well, that was the question, so now we've solved one problem. Okay, let's go on. But we still do believe that the medical staff as a whole is a State actor. The MEC. I'm still going to respectfully draw a distinction, that there needs to be a distinction. The MEC is just a committee of the medical staff. It is the medical staff who is the entity. They are, as what Judge Proh seemed to believe in another case involving the same defendants but a different physician, an unincorporated association. And so it's the medical staff that's the actual entity with the MEC as being their governing body. They rotate out people all the time through the MEC. I guess what evidence is that there is anything here except what the MEC did on any other members of the medical staff who are not part of the MEC? Well, I mean, it seems to me the evidence is pretty carefully pled by you that the MEC did a lot of bad things, and therefore, they ought to be hit. My worry is that as I read your pleadings, I can't find any other people who are not in the MEC who did anything. I understand and recognize your point, Your Honor. I just, as a plaintiff, we wouldn't know how to name a governing committee as an entity, as a defendant. I mean, can I go and name? Just because they're a governing entity, that's why you say? I thought in these kind of cases, there is no vicarious liability. There is no vicarious liability. So therefore, it would be the entity that the medical staff, that the MEC is representing and taking action on behalf, that would exactly be responsible, and so that's why I still fall back to the medical staff position, because the medical staff is the association. There's no separate, it's the bylaws of the medical staff. It's not the bylaws of the MEC that would govern, for example. Thank you, Your Honor. I'd like to reserve the remaining time to address the issues of ACQUIA on the process counsel. Scalia. Yes, counsel.  Good morning. May it please the Court. Robert McBride, on behalf of appellees and cross-appellants, the medical and dental staff of UMC, and the individual physician defendants, John Ellerton, M.D., Marvin Bernstein, M.D., Dale Kerrison, D.O., and Donald Roberts, M.D. Can you tell me the individuals you've named, the members of the medical committee? Yes, they are, Your Honor. Thank you. Your Honor, it's our position, as the appellees in this case, that the lower court correctly made a determination that summary judgment was proper in finding that these individual private physicians were not State actors, and therefore, there was no evidence that was submitted in opposition to the motion for summary judgment that we filed that would indicate that they were acting under color of State law. And therefore, the Court's ruling on that issue was appropriate. As I think the Court has already pointed out, the MEC was not specifically named in this case, and the allegations that have been raised by plaintiff in both his complaint and in the opposition to the motion for summary judgment was that the The individuals who determined that Dr. Choucaud's staff privileges should be removed, revoked, whatever the proper term is, what authority were they acting under? The authority that they were acting under, Your Honor, would be the bylaws, according to the bylaws that were created for the hospital, that govern the procedure for the discipline of physicians for conduct that was detrimental and potentially dangerous to the public at large. And who owns the hospital? The hospital is a county hospital. However, I think in this case, the Court was faced with the fact that plaintiff in opposition to the motion for summary judgment failed to provide any rebuttable evidence, any evidence to rebut the fact that these individual named physicians were not State actors. Well, I guess I'm trying to figure out, reading the case law on private entities and private people, they can be State actors, correct? Yes, I think that's correct.  Correct. Correct, Your Honor. There's a close nexus between the State and the challenge to action that's seemingly private behavior may be fairly treated. Now, I guess I'm still trying to figure out, given the bylaws, given the authorities of the hospital, how those private doctors you're suggesting are not closely mixed with the State actor when they're the part of the MEC who did what happened. Well, Your Honor, I think the distinction would be in a situation where the MEC, for example, appointed a physician to the MEC elected by the other members of the medical staff, 1,400 physicians approximately that comprise the medical staff, and as opposed to a situation where they would be appointed by a governmental entity such as the Board of Trustees. Whether they're appointed or whether they're elected, the medical staff and the MEC acting for them has delegated the administration and oversight duties over the hospital and the physicians who work there. So, therefore, they carry out a State action. Well, I would disagree, Your Honor. I think the they're not carrying out a State action. They're essentially policing. Well, isn't it the hospital's policy? Isn't it the hospital's bylaws and everything that has to do with the administration of the hospital? And the hospital is a county agency, and they do what they do, and, therefore, I'm still trying to figure out why there isn't some close nexus here. Well, I think, Your Honor, the distinction being that the bylaws are created in order to provide guidance to the physicians and to how they are to operate themselves and to police themselves. The Medical Executive Committee, which is then comprised of these individual physician defendants, there is a potential, I think Your Honor correctly pointed out, that they may be possibly a State actor or considered to be the appropriate entity to be named as a defendant. They weren't named as a defendant in this case. The individual named physicians, however, I believe But they're the same individual named physicians who are also on the committee. Agreed. They are the same individuals. However, again, they're carrying out the function of the bylaws, which are to police themselves, not comprised to, and in order to protect the public at large, which is their fundamental priority in this case. Who pays these doctors? The doctors are private physicians. They receive no county funds whatsoever? That is correct. That is correct. They receive no county funds. Who pays their malpractice premiums? They do. They do themselves. They're private physicians with their own malpractice insurance and so on. Who's paying you? Who's paying me? Yes, sir. Your Honor, the insurance — actually, not the insurance company in this case. In this case, I am representing the individual defendants by the — you know, I don't know the exact answer to that question. You don't know who's paying your fee? I don't. In fact, because I'm not the one in particular who — You don't know who you send your bill to? My partner is. My partner is. And I apologize for not knowing exactly who that entity is. But I believe it may be UMC itself. Okay. Let me ask you this, putting everything in this lawsuit just aside for the moment. I take it the medical professionals at this — at the University Medical Center feel that Dr. Chutkoff shouldn't have staff privileges there. Is that correct? That's correct. And that they have good and sufficient sustainable reasons for denying that privilege. That's correct. And that they have nothing to fear from telling him well in advance of the hearing what those charges are and what evidence they have to support it. Is that right? Well, Your Honor, I think under the — that's not entirely correct. I think under the facts of this case, and in particular the procedure that's required of — I'm just asking you to — Under the bylaws. Sure. If you disagree at the end of my chain of questions, you're perfectly free to say that. Okay. You know what I'm getting at? What in the world would be wrong about having a hearing telling him in advance what the charges are and what evidence sustains those charges, having the hearing and making a reasoned decision after hearing that evidence in his side of the story? What's wrong with that? Well, I don't know that there's anything particularly wrong with that, Your Honor. The bigger issue is really the obligations that the MEC has to protect the public. And in this case, that's the public policy. I assume, just as a general matter, that they wouldn't have attempted to do what they apparently wanted to do, that is, take away his staff privileges, unless they thought that was the case. But that all leads to this question. At one point, this committee wanted to take away his privileges because he had made an allegedly false statement on his application. Is that correct? That's correct, Your Honor. And they had a hearing about that? Yes, Your Honor. Did they tell him in advance what the charge was? It's my — it's my — The answer is no, isn't it? Well, I believe that's correct. They did not tell him that specific charge with regard to his application. And here's what he tells us. He says, the questionnaire asked if I've ever received a letter of reprimand, and apparently the hospital found out that he had indeed received a letter of reprimand from the United States Navy, and that was the documentary evidence the committee had. But because they didn't tell him in advance what the charges would be and didn't give him an opportunity to gather his own evidence, he couldn't tell the committee — and this is what he says, we don't know if it's true or not — what he says is, I took this issue all the way up to the Board for Correction of Medical Records, they wouldn't give me relief. I went to the United States district court in the District of Columbia, and they removed this information from my record. And because you didn't give me the chance to gather this information and tell you that, it was a one-sided hearing. Now, what's the fairness in that? Well, Your Honor, I believe that there were subsequent hearings that were given to Dr. Chudikoff, and he's already had several hearings, two fair hearings and at least two appeals. Well, is it a fair hearing to say we want to take away your medical privileges because you lied in response to your application for privileges, and we have the evidence, but we're not going to tell you what the charge is, and we're not going to give you enough time to come up with your side of the story? Is that fair? Your Honor, I think it is when given the obligation that the MEC has, especially given the other issues involving Dr. Chudikoff. Okay. Then let me ask you this. If it is correct, we don't know if it is or not, but if it is correct that the United States district court in the District of Columbia removed the letter of reprimand from his records, was his answer false? It was still, I believe, the position of the hospital and the executive committee that it was false, yes. Because he received the letter. Correct. And it was later removed. The answer should have been, yes, I've received the letter. Correct. That's the position. Correct. But I guess my worry is that we're here on summary judgment. Absolutely. And I'm to take the facts as alleged by the plaintiff. And if I go through what my colleague has just gone through, I don't know that one could say that the plaintiff would say it's still false. And yet that's what I have to make this ruling on. Well, and, Your Honor, even if your Honors were to decide that there is sufficient nexus to create State action on the part of the physician defendants, individual defendants, which we believe the Court properly ruled on, we still think on our cross-appeal that the MEC, that the physician defendants would be entitled to HICWA immunity under the case, under the Smith v. Ricks case, as well as other cases decided by this Court and others in different jurisdictions. And that would make them immune from any money damages. So that's the subject of our cross-appeal. I did want to raise that particular point to the Court. And I think it's Well, as I understand, the district court found that UMC's suspension of his medical staff privileges was not a summary suspension for not more than 14 days, nor was it taken in to prevent an imminent danger to anyone's health, and therefore it does not apply, that rather this is a routine administrative action, and that they should have followed notice and hearing procedures as set forth in the administrative procedures of the hospital. Well, Your Honor, whether it's I mean, bottom line, I don't understand. I mean, frankly, reading what the district court found as to what kind of a suspension or what it was, that, frankly, I saw it as an administrative action, and I think that then the statute you reference is not applicable at all. The HICWA statute. Correct. Your Honor, I would disagree. I think under the Smith v. Ricks case, that that is was a case decided by the Ninth Circuit, and it's very identical to the situation that we have here. And I think in that case, the court upheld the district court's, the lower court's ruling that immunity did apply. And I think that the — whether it's considered to be a summary suspension or an administrative action under either of those scenarios, that the defendants, the appellants, cross-appellants and appellees would be entitled to immunity under that case. Okay. Thank you, Justice. Thank you. Did she ask her time? You have left 43 seconds for your co-comment. That's all I needed. Lynn Hansen, on behalf of University Medical Center, Kathy Silver, and the Board of Trustees, which is also Clark County Commissioners, I think the questions of Justice have pointed out that we are State actors. However, we played no significant role in the deprivation of this person's privileges at the hospital. We have no role. We're not doctors. We can't make those decisions. Other than giving these folks the authority to do it. Correct. And that's why we delegated to those folks, because we are not physicians, we're not peers, we can't do peer review. Okay. Thank you, Kathy. You're welcome. Does this case have any potential for mediation? We've offered numerous times to try to work this out, Your Honor. The problem is, is the doctor's lost his career at this point because of the National Practitioner Data Bank report that's been filed. And so, I mean, whatever mediation that's going to occur has to recognize that he has lost his career and has lost his income for the last two years, three years at this point. Your Honor, I'd like to address a few quick issues. First of all, on the cross-appeal, 1980, it was a private hospital. 1983 and State action was never involved in that. And so if we find in this case that there was State action and that the 1983 claims are viable, then HEQIA immunity doesn't apply at all. But notwithstanding, Smith v. Ricks basically said it's not form over substance, it's substance over form. You know, even if you don't follow your bylaws, as long as you do provide that adequate notice and opportunity to be heard, then, okay, you get the immunity. Here, in this case, as the district court initially found in its April 19, 2009, amended order, you know, they didn't even follow the basic requirements of the HEQIA safe requirements, the four-step test. Interesting, I'd like to say that it's public record that the county has been paying the medical doctors' lawyers' fees. It's been approved at numerous county commission meetings. It's public record. Those bills have been submitted. So while opposing counsel can't answer that question, I've seen the bills through public agendas that the county's been paying for the doctors. And it just goes to show that the color of state law does attach here. And really, to take one of Judge Hawkins' teaching moments, do you really think there's anything more you have to say that we haven't all heard? I would like to make one final point, Your Honor. My concern with the argument that a due process violation can occur by the doctors and they can't be liable until or if the, and there's no liability that attaches until the board of trustees ratifies that or approves it, is problematic. For example, in this case, the suspension occurred in May. The only reason why the doctor ever began to hear from them was because we filed a federal action claiming due process violation. He couldn't get them to talk to him at all to find out why they suspended him. Then we had the hearing in September, on September 11th, ironically. And then eventually in January, we got to the board of trustees. They sent it back to a hearing. I mean, this matter hasn't even gotten through for well over a year and months. And so the question is, is this due process violation that occurs, if the medical staff and the doctors are not liable for it, is the doctor supposed to just suck it up and say, that's the cost of doing business? And that's the last issue I'd like to raise. Thank you. Thank you, counsel. The court will, the case we just argued is submitted. The court will take a brief recess and return reconstituted for the final case. All rise.
judges: Reinhardt, Hawkins, Smith N. R.